# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2011

No. 10-30318

Lyle W. Cayce
Clerk

CLINT MARTINEZ,

Petitioner-Appellee

v.

JAMES D. CALDWELL, Attorney General of the State of Louisiana; BRENT
ALLAIN, Sheriff of Iberville Parish, Louisiana,

Respondents-Appellants

Appeal from the United States District Court
for the Middle District of Louisiana

Before JONES, Chief Judge, JOLLY, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Louisiana Attorney General James D. Caldwell ("the State") appeals the
district court's order granting the habeas corpus petition filed by Defendant-
Appellee Clint Martinez ("Martinez"). Martinez's first murder trial ended in a
declaration of mistrial. When the State sought to retry him on the murder
charge, Martinez moved to prevent the trial under the doctrine of Double
Jeopardy. His motion was granted, but reversed on appeal. Martinez then filed
for federal habeas and the State stayed Martinez's prosecution pending the
disposition of his federal petition. For the reasons discussed below, we VACATE
the district court's order and DENY Martinez's habeas petition.

No. 10-30318

I

In 2002, the State tried Martinez for second-degree murder in a three-week trial that included testimony from twelve experts and forty other witnesses, including Martinez. After three hours of deliberations, the jury summoned the state trial judge, Judge James J. Best ("Judge Best"), to the jury room. After receiving no objections from counsel, Judge Best entered the jury room, jurors immediately informed him they could not reach a verdict, and jurors stated that the vote was deadlocked at nine to three in favor of acquittal.[1] Judge Best did not elicit, and may have even tried to prevent, this disclosure. When Judge Best returned to the courtroom, he notified both parties that the jury was deadlocked, and stated that the vote stood at nine to three. Judge Best did not, however, tell the parties the direction of the vote. Once Judge Best disclosed the nine to three vote, counsel and the judge, via a series of off the record sidebar conferences, discussed the possibility of a mistrial. Neither party formally moved for a mistrial, but the parties apparently agreed that the court should poll the jury and enter a mistrial if the jury was deadlocked. Judge Best summoned the jury back into the courtroom. In response to Judge Best's inquiries, the foreperson stated that the jury was deadlocked and that additional time would not help the jury reach a verdict. Judge Best asked both parties whether they had objections to the declaration of a mistrial; neither party objected and Judge Best declared a mistrial. Moments after the day's proceedings ended, one of Martinez's attorneys learned that Judge Best had, in fact, known the direction of the jury's vote when the parties had discussed a mistrial with the judge.

When Martinez learned that the State intended to retry him on the murder charge, he moved to quash the indictment on the ground that a second

[1] In Louisiana, ten votes are required for a verdict on a second degree murder charge.

2

No. 10-30318

trial would subject him to double jeopardy. The Louisiana Supreme Court assigned Judge Jerome M. Winsberg ("Judge Winsberg") as judge ad hoc to preside over the hearing on the motion. Following a two day evidentiary hearing, Judge Winsberg concluded that Judge Best had acted "improperly" in failing to disclose to counsel the full details of his interaction with the jury and that by failing to provide the direction of the jury's vote, Judge Best had "inadvertently goaded [the defense] to ask for the mistrial." *State v. Martinez*, 05-466, p. 8 (La. App. 1 Cir. 7/26/06); 934 So. 2d 981 (internal quotations omitted). The State appealed Judge Winsberg's decision to Louisiana's First Circuit Court of Appeals. Citing the Supreme Court's holding in *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982), the First Circuit explained that "inadvertent provocation" is not sufficient to bar retrial. *Martinez*, 05-466, p. 8. Rather, the state appellate court concluded that *Kennedy* requires the petitioner to show "a deliberate, intentional act by the court of goading the defendant into moving for a mistrial." *Id*. The appellate court held that Judge Best's behavior, while perhaps improper, was not intended to provoke a mistrial, and thus, Judge Winsberg had erred in granting Martinez's motion.

After exhausting his remedies in the Louisiana courts, Martinez sought habeas relief under 28 U.S.C. § 2241.[2] A federal magistrate judge considered the habeas petition, applied a de novo standard of review, and determined that Martinez had not satisfied the "intentional goading" standard articulated in *Kennedy*. The magistrate recommended that Martinez's habeas petition be dismissed with prejudice and concluded a retrial of Martinez would not violate his Fifth Amendment rights. The parties objected to the magistrate's Report and Recommendation and the district court considered the objections. The district court, like the magistrate, reviewed Martinez's habeas petition under a de novo

---

[2] The State noticed its intent to retry Martinez, but agreed not to proceed with prosecution pending disposition of Martinez's federal habeas petition.

No. 10-30318

standard. But the district court disagreed with the magistrate's evaluation of the trial proceedings and concluded that Judge Best had intentionally goaded Martinez into consenting to a mistrial. Based on this conclusion, the district court granted Martinez's habeas petition. Dissatisfied with the district court's ruling, the State appealed.

II

Before we consider whether the district court correctly granted Martinez's petition, we must evaluate whether that court erred by reviewing Martinez's § 2241 petition de novo. The State argues that we should review § 2241 petitions with the same deference that we give habeas corpus petitions filed under 28 U.S.C. § 2254. This issue presents a question of first impression for our circuit.

For habeas petitions filed under § 2254, we must presume that a state court correctly determined questions of fact and we must give deference "to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting § 2254(d)(2)). Under § 2254, when a state court makes determinations for mixed questions of fact and law, those determinations receive our deference unless the findings were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1).

As a pretrial detainee, however, Martinez's habeas petition is governed by § 2241. Section 2241 does not contain a standard of review, but the First, Ninth, and Tenth Circuits have all held that § 2254(d) deference never applies to habeas petitions brought by pretrial detainees under § 2241. *See Walck v. Edmondson*, 472 F.3d 1227, 1234–35 (10th Cir. 2007); *Stow v. Murashige*, 389 F.3d 880, 885–88 (9th Cir. 2004); *Gonzalez v. Justices of the Mun. Court of Boston*, 382 F.3d 1, 5–6 (1st Cir. 2004), *rev'd on other grounds*, 544 U.S. 918 (2005). We agree with those circuits' holdings. The deferential standard afforded

to state court decisions, which is specifically articulated in § 2254, is not included in the text of § 2241. *Compare* § 2254(d) *with* § 2241; *see also Walck*, 472 F.3d at 1234 ("the language of § 2254 clearly indicates that its provisions are only operable as to a petition for habeas relief" filed by a post-trial petitioner). In addition, when Congress amended § 2254(d) in 1996 amid sweeping habeas reform, it did not similarly amend § 2241. "[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *City of Chicago v. Env't Def. Fund*, 511 U.S. 328, 338 (1994) (internal quotations and citations omitted). Finally, § 2254(d) was designed to impose additional burdens on post-conviction habeas petitioners and to effect the gatekeeping function of the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Sepulveda v. United States*, 330 F.3d 55, 66 (1st Cir. 2003). There is no similar evidence that AEDPA or § 2254 were intended to impact pre-trial detainees or § 2241.

The State asks us to break from these other circuits, arguing that the rationale for differentiating between § 2241 and § 2254(d) for deference purposes ceases once a state court has fully adjudicated "precisely the same claim now brought in federal" court. This argument is unavailing. The plain language of the statutes clearly demonstrates that § 2254 is textually distinct from § 2241: one explicitly mandates deference, the other does not. In addition, Congress enacted AEDPA, as it related to habeas reform, to "curb the abuse of the statutory writ of habeas corpus," and to "address problems of unnecessary delay." *Caldwell v. Dretke*, 429 F.3d 521, 528 (5th Cir. 2005) (internal quotations and citations omitted). Nothing in § 2241, or its legislative history, indicates that Congress perceived a problem, or a need to address similar habeas abuses under § 2241. Thus, the district court did not err by conducting a de novo review of Martinez's state court proceedings and we apply the same standard when reviewing his petition under § 2241.

No. 10-30318

### III

The State argues that the district court erred by concluding that under *Kennedy*, Judge Best intentionally goaded the defense into requesting a mistrial. We agree.

The Fifth Amendment's Double Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense. Under that clause, a defendant has the right "to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689 (1949). More specifically, a defendant has a right to a complete trial by the jury first selected and impaneled. *See generally United States v. Scott,* 437 U.S. 82, 93–94 (1978). When a defendant's first trial is terminated prior to verdict, the circumstances of the termination determine whether the Fifth Amendment bars retrial. If the trial is terminated over defense objection, retrial is prohibited absent "manifest necessity." *Kennedy*, 456 U.S. at 672. A hung jury is "the prototypical example" of manifest necessity. *Id.* In the case of a mistrial declared at the defendant's request, the manifest necessity standard does not apply. *Id.* This is because a defendant's motion for mistrial constitutes an election to forgo the "valued right to have his guilt or innocence determined by the first trier of fact." *Scott*, 437 U.S. at 93 (*citing United States v. Dinitz*, 424 U.S. 600, 609 (1976)). So too, when a defendant expressly or impliedly consents to a mistrial. *United States v. Palmer*, 122 F.3d 215, 218 (5th Cir. 1997). And, if a defendant fails to timely object to a mistrial declaration, he is held to have impliedly consented to the mistrial and may be retried in a later proceeding. *Id.* at 218.

When the defense moves for, or consents to, a mistrial, the Double Jeopardy Clause may bar retrial if the government "intended to goad the defendant" into requesting a mistrial. *See United States v. Wharton*, 320 F.3d 526, 531 (5th Cir. 2003) (citation and internal quotation marks omitted). But this standard is exacting. Government misconduct "that might be viewed as

6

harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion . . . does not bar retrial." *Kennedy*, 456 U.S. at 675–76. Not even the government's "gross negligence" would prevent a retrial of the defendant. *Robinson v. Wade*, 686 F.2d 298, 306 & n.17 (5th Cir. 1982). Instead, the Double Jeopardy clause bars retrial only when "bad faith conduct by judge or prosecutor threatens harassment of an accused . . . so as to afford the prosecution a more favorable opportunity to convict the defendant." *Dinitz*, 424 U.S. at 611. A prosecutor or judge must specifically act in "bad faith" or must intend to goad the defendant "into requesting a mistrial or to prejudice the defendant's prospects for an acquittal." *Id*. at 611–12.

In this case, we do not need to decide whether Judge Best should have notified the parties of the direction of the jury's verdict. This is because the critical inquiry is what Judge Best intended to accomplish by intentionally withholding the direction of the jury's vote. The district court concluded that Judge Best's intent was illustrated by his "admission that he withheld the direction [of the jury vote] because he thought that if he revealed it the defense would not request a mistrial." *Martinez v. Caldwell*, No. 08-617, 2010 WL 1385024, at *3 (M.D. La. Mar. 29, 2010) . This conclusion relied on a single-word answer from Judge Best's testimony during the evidentiary hearing.[3] And, the court concluded that this lone admission outweighed the totality of Judge Best's testimony and demonstrated an intent to goad the defense into mistrial. It is difficult to agree with the district court's conclusion when one considers all of Judge Best's testimony. Rather, as the magistrate's Report concluded, when

---

[3] Q:    "And the reason for that was that you knew or felt that if the defense had found out the vote was nine to three not guilty they would not have moved for a mistrial?"

A:    "Yes."

considered in full, Judge Best's explanation of events does not demonstrate intentional bad-faith conduct. Judge Best had no legal duty to disclose the direction of the jury's vote, which he inadvertently learned when jurors announced the vote before Judge Best could prevent the disclosure. *See United States v. Warren*, 594 F.2d 1046, 1049 (5th Cir. 1979). Judge Best testified that he had disclosed the numerical division of the jury to demonstrate to the attorneys that the jury was close to reaching a decision and should be sent back to deliberate. In addition, Judge Best testified that he did not want a mistrial, and given the short period of jury deliberation, the judge thought that the jury should continue deliberations. Furthermore, Judge Best testified that during sidebar conferences, counsel for both parties asked him not to disclose the direction of the vote. This testimony fails to demonstrate that Judge Best intentionally acted in bad faith. Nor does this testimony show that Judge Best limited his disclosure about the jury's vote to intentionally goad the defense into consenting to a mistrial.

The district court concluded that the specific facts of what transpired at the sidebar conferences were "irrelevant; what matters is that Judge Best withheld information and the defense agreed to a mistrial." This analysis, however, is erroneous. The gravamen of this case are the sidebar conferences. The fact that Judge Best withheld information is secondary to *why* he withheld that information. In answering that question, the district court's analysis never moved beyond the Judge Best's single-word "admission." That "admission" came summarily near the end of a lengthy cross-examination in which Judge Best was, at times, inarticulate. In light of Judge Best's entire testimony, his answer to this lone question appears to be a rote "yes," not an admission of a bad faith conduct or an intent "to harass or prejudice" the defendant. *Dinitz*, 424 U.S. at 611.

No. 10-30318

IV

For the reasons discussed above, we VACATE the district court's order and we DENY Martinez's petition for habeas relief.[4]

---

[4] We GRANT the Appellee's Motion to File a Sur-Reply Brief.