RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0043p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JAMES PHILLIPS,

        *Petitioner-Appellant,*

      *v.*

COURT OF COMMON PLEAS, HAMILTON
COUNTY, OHIO,

        *Respondent-Appellee.*

No. 10-4280

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 09-00064—Susan J. Dlott, Chief District Judge.

Argued: January 10, 2012

Decided and Filed: February 10, 2012

Before: SILER and GRIFFIN, Circuit Judges; TARNOW, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Ravert J. Clark, Cincinnati, Ohio, for Appellant. Philip R. Cummings, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Ravert J. Clark, Cincinnati, Ohio, for Appellant. Philip R. Cummings, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

    GRIFFIN, Circuit Judge. James Phillips appeals the district court's denial of his pretrial petition for a writ of habeas corpus filed under 28 U.S.C. § 2241. After the state trial court granted Phillips's motion for a mistrial, the State of Ohio sought to retry him.

---

[*]The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

He moved to dismiss the indictment on double jeopardy grounds, but the state court denied his motion. This habeas petition followed. We affirm.

I.

James Phillips was indicted in the Hamilton County Court of Common Pleas on two counts of Unlawful Sexual Conduct with a Minor, in violation of Ohio Rev. Code § 2907.04(A), and one count of Gross Sexual Imposition, in violation of Ohio Rev. Code § 2907.05(A)(1). The indictment alleged that one count of Unlawful Sexual Conduct with a Minor occurred on an undetermined date in May 2006. It alleged further that a second count of the same offense and one count of Gross Sexual Imposition occurred on an undetermined date in June 2006. A bill of particulars identified the same dates.

The prosecution's theory was that Phillips, a neighbor and family friend of thirteen-year-old D.B. and her foster mother, on two occasions engaged in unlawful sexual conduct with D.B., the second time using a threat of force. According to the prosecution, the first incident took place while D.B. was at Phillips's house using his computer. After engaging in sexual conduct, Phillips used a digital camera to take photographs of D.B. topless. During the second incident, again at Phillips's house, Phillips fondled D.B. over her objection. D.B. later reported both incidents to her foster mother and to police. Phillips's defense at trial was that D.B. made everything up to protect her foster mother, whom Phillips had allegedly threatened.

A visiting judge presided over the trial. The state's first witness was David Ausdenmoore, a computer forensics expert with the Cincinnati Police Department. Ausdenmoore testified regarding his forensic examination of two computers, a separate hard drive, and a digital camera, all seized from Phillips's residence. He found five photographs of a topless D.B. in the deleted space of the digital camera's memory card. Each was electronically imprinted with a date of December 18, 2005. He also examined the internet history from December 1, 2005, to July 26, 2006, for one of the seized computers. According to the computer's clock, which Ausdenmoore testified was "pretty accurate," the first internet usage during that period was on December 18, 2005, the same date indicated on the photographs. The computer contained various user

profiles, including "Shadow Roth," a name later established to be one D.B. frequently used as an internet login. The computer's internet activity log for the night of December 18, 2005, showed that the user Shadow Roth accessed various websites throughout the night. Some websites required the visitor to self-identify, and the visitor identified using D.B.'s name.

The next witness was D.B. She testified that she lived with her foster mother from the time she was two-and-a-half years old, and that she used to be friendly with Phillips. According to D.B., the first incident occurred as she was getting ready for bed and Phillips visited her home after work. D.B. told Phillips that her computer was not working and asked to use his. He obliged, and they left with the permission of D.B.'s foster mother. Before arriving at Phillips's home, Phillips stopped to purchase cigarettes, beer, and food. During the drive, Phillips made remarks of a sexual nature, and D.B. engaged in the conversation but felt uncomfortable. The two later drank beer, smoked marijuana, and watched pornography. At some point during the night, while D.B. was lying on Phillips's bed, he began touching her breasts. She tensed up, he told her to relax, she did, and he continued. D.B. removed her shirt and Phillips took pictures of her topless. The two later engaged in sexual intercourse. At some point during the night, D.B. used Phillips's computer to access various websites, at times using her name and "Shadow Roth" as login names.

D.B. testified that this occurred in May 2006. The prosecutor asked whether it was possible that the incident occurred on December 18, the date indicated on the photographs and internet history, but before she could answer, she was interrupted by an objection that the court sustained. At sidebar, defense counsel reminded the court that the indictment and bill of particulars alleged that the first incident occurred sometime in May 2006, not on December 18, 2005, that he had prepared a defense around the May 2006 date, and that it would be unfair to allow the line of questioning to continue. The prosecutor responded that he was permitted under the Ohio Rules of Criminal Procedure to amend the indictment at any time to conform it to the evidence. When the court asked why he had not amended the indictment upon receiving the forensic report including the

December 18 date, the prosecutor said that he first became aware of the December 18 date the morning of the first day of trial.

Following a discussion with the parties in chambers, the court made its final ruling on Phillips's objection and the prosecutor's implicit motion to amend the indictment. It noted that an amendment would prejudice Phillips in the following way: if the indictment had alleged a December 18 date, Phillips would have investigated and prepared a defense for that date, but now it was too late because trial had already begun. Even though the prosecutor had disputed the existence of prejudice, stating that defense counsel had the photographs and internet history well before trial, the court found prejudice and noted that the prosecutor, too, had received the pictures and internet history earlier, and that it was his duty to amend the indictment before trial. The court stated that it would not allow an amendment and would not permit the prosecutor to question D.B. further regarding the date of the first incident. It also would not grant a mistrial because neither party wanted one. It would, however, reconsider amending the indictment if the prosecutor filed a motion citing some authority.

The prosecutor completed his direct examination of D.B. On cross-examination, defense counsel elicited damaging testimony, including inconsistencies between D.B.'s trial testimony and her initial statement to police, and an admission that she would lie to protect her foster mother if she had to.

The following day, the prosecutor filed a motion to amend the indictment to allege that the first offense occurred on an undetermined date between December 2005 and May 2006. Citing Ohio Criminal Rule 7(D) and some cases, the prosecutor asserted that the court had improperly conflated the analysis under the Rule and considered whether Phillips would be prejudiced when it determined whether to allow an amendment, rather than determining the existence of prejudice only when considering whether to grant a mistrial. At a hearing the next day, defense counsel again argued that the opportunity to amend had long passed. He argued further that an amendment was not warranted under Rule 7(D) because there had been no variance or defect in the indictment, and that the prosecutor was merely using the Rule as a subterfuge to fix a

problem inherent in his case.  Noting the court's earlier-stated reluctance to continue the trial with the same jury after a lengthy recess to allow Phillips to explore other defenses, Phillips's counsel argued that he was forced to seek a mistrial in order to further investigate the new date.

The prosecutor pointed out in response that the computer forensics report indicating the December 18, 2005, date on the photos and internet history was created at the request of *defense counsel*, and that he (the prosecutor) had not paid it any attention when he received it.  He admitted that he should have reviewed the report but failed to do so, and that in hindsight he would have reviewed it and amended the indictment earlier.  He insisted, however, that Rule 7(D) allowed him to amend the indictment even at this late stage in the proceedings.

The court granted the prosecutor's motion to amend.  It stated that failing to amend the indictment until mid-trial was not part of a "deliberate ploy on the part of the prosecutor," but was "basically a failure to look at [the] case with the thoroughness that might have been required or not perceiving in a busy schedule the difference of certain facts in the case."  It was "a matter of negligence, as far as [the court could] see, at worst, a matter of negligence or [inadvertence]."  The court found, nevertheless, that Phillips had been prejudiced by the amendment because he was deprived of the opportunity to investigate the earlier date prior to trial and formulate a defense as to the new dates.  Continuing the trial with the same jury was not feasible.  It advised that it would grant a mistrial at Phillips's  request.  Defense counsel made a motion, and the court granted it.

The indictment was amended to allege that the offense charged in count one took place on an indeterminate date between December 1, 2005, and May 31, 2006.  Phillips moved to dismiss the indictment, arguing that a retrial would violate the prohibition on double jeopardy because, by amending the indictment mid-trial, the prosecutor had intended to goad Phillips into requesting a mistrial.  *See Oregon v. Kennedy*, 456 U.S. 667 (1982).  He surmised that the prosecution was proceeding so poorly that the prosecutor's only alternative to an acquittal was to start over.  The prosecutor responded

that "nothing could be further from the truth," stating that "[t]he [victim's] testimony was not going to change from one trial to another," and that "the State ha[d] no interest in intentionally putting a fifteen-year-old girl through another round of cross-examination." He stated that he sought the amendment "to make sure the jury was properly instructed on what [the state] had to prove about when the first offense occurred." Stating only that Phillips's motion was "not well taken," the presiding judge (not the visiting judge, who presided at trial) denied the motion in a summary order, apparently relying on the visiting judge's determination that the mid-trial amendment was not the result of a deliberate ploy on the part the prosecutor, but rather a failure to adequately prepare the case for trial.

Phillips filed the instant habeas petition under 28 U.S.C. § 2241, renewing his double jeopardy claim. The district court adopted a magistrate judge's recommendation to deny the petition and issued a certificate of appealability. Phillips timely appealed.

## II.

We consider at the outset the legal standards applicable to Phillips's petition, recognizing that we give fresh review to the district court's decision. *See Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010). Phillips filed his petition under 28 U.S.C. § 2241, but the district court evaluated it under § 2254 and concluded that the state court's denial of Phillips's motion to dismiss was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent, and that Phillips had failed to rebut with clear and convincing evidence the presumption of correctness that applied to the state trial court's factual findings. *See* 28 U.S.C. § 2254(d)(1), (e)(1). It erred by applying § 2254.[1]

---

[1]Phillips did not object to the report and recommendation's application of § 2254, nor does he assert any error in this regard on appeal. Even so, we have previously held that a petitioner cannot forfeit or waive the standards that apply to habeas petitions. *Brown v. Smith*, 551 F.3d 424, 428 & n.2 (6th Cir. 2008).

Congress's general grant of habeas authority to the federal courts appears in 28 U.S.C. § 2241, which extends the writ to, among others, persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).[2] One section of the habeas statute – section 2254 – concerns habeas relief available to a subset of petitioners: those "in custody *pursuant to the judgment of a State court . . . .*" *Id.* § 2254(a) (emphasis added). Although Phillips remains "in custody," his custody is not "pursuant to the judgment of a State court." Rather, he is in custody *pursuant to an indictment*. Section 2254, therefore, by its own terms, does not apply to Phillips's petition, and it would be error to apply § 2254 here. We have long recognized that pretrial detainees pursue habeas relief instead under § 2241. *See Girts v. Yanai*, 600 F.3d 576, 587 (6th Cir. 2010); *Atkins v. Michigan*, 644 F.2d 543, 546 n.1 (6th Cir. 1981).

Our review of state court decisions differs significantly depending on which section of the habeas statute applies. For habeas petitions filed under § 2254, we may not grant relief on the basis of an incorrect factual determination by a state court unless the determination was "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). And where habeas relief under § 2254 is predicated on a state court's alleged misapplication of the law to the facts, federal relief is prohibited unless the application of Supreme Court precedent was "unreasonable." *Id.* § 2254(d)(1). Congress imposed these standards when it passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and they are intended to be difficult to meet. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

The standards that apply to § 2241 petitions, by contrast, are significantly less demanding. The First, Fifth, Ninth, and Tenth Circuits have concluded that the deference that § 2254(d) requires never applies to habeas petitions brought by pretrial detainees under § 2241, and no circuit to our knowledge has held otherwise. *See Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Walck v. Edmondson*, 472 F.3d 1227, 1234-35 (10th Cir. 2007); *Stow v. Murashige*, 389 F.3d 880, 885-86 (9th Cir.

---

[2]Phillips satisfies the "in custody" requirement of the statute even though he has been released and remains on bond pending his retrial. *See Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 300-01 (1984).

2004); *Gonzalez v. Justices of Mun. Ct. of Boston*, 382 F.3d 1, 6-7 (1st Cir. 2004), *judgment vacated on other grounds*, 544 U.S. 918 (2005). As the Fifth Circuit recently stated in *Martinez*, "[t]he deferential standard afforded to state court decisions, which is specifically articulated in § 2254, is not included in the text of § 2241." 644 F.3d at 242. Furthermore, AEDPA significantly amended § 2254(d) but left untouched § 2241, and courts operate on the assumption that "'Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.'" *Id.* (quoting *City of Chicago v. Env't Def. Fund*, 511 U.S. 328, 338 (1994)). We agree with our sister circuits and hold that habeas petitions governed by § 2241 are not subject to the heightened standards contained in § 2254(d).[3] Accordingly, we must conduct a de novo review of the state court proceedings in addressing Phillips's petition. *See Martinez*, 644 F.3d at 242; *Walck*, 472 F.3d at 1235.

### III.

Phillips claims that a retrial would violate the constitutional prohibition on double jeopardy. Before we address the merits of the claim, however, we pause briefly to discuss the issue of exhaustion. Habeas petitioners must exhaust all available state court remedies before proceeding in federal court, and this usually requires that they appeal an adverse decision all the way to the state's court of last resort. *Klein v. Leis*, 548 F.3d 425, 429 n.2 (6th Cir. 2008).[4] But in Ohio, a trial court's denial of a defendant's motion to dismiss on double jeopardy grounds is not an order subject to judicial review before a retrial. *Wenzel v. Enright*, 623 N.E.2d 69, 72 (Ohio 1993). Therefore, Phillips was unable to seek direct review of the trial court's decision. But because the Double Jeopardy Clause prevents being twice placed in jeopardy for the

---

[3]Our decisions in *Harpster v. Ohio*, 128 F.3d 322 (6th Cir. 1997), and *Ross v. Petro*, 515 F.3d 653 (6th Cir. 2008), do not foreclose today's holding. In both cases, we applied § 2254(d) to habeas petitions challenging pretrial custody without recognizing that the petitions were properly governed by § 2241. Therefore, those cases did not squarely address the issue we decide today.

[4]Unlike exhaustion under § 2254, exhaustion under § 2241 is not a statutory requirement. *Compare* 28 U.S.C. § 2254(b)(1)(A), *with id.* § 2241. Rather, in the § 2241 context, "decisional law has superimposed such a requirement in order to accommodate principles of federalism." *United States ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir. 1976) (citing *Ex parte Royall*, 117 U.S. 241, 252-53 (1886), and *Fay v. Noia*, 372 U.S. 391 (1963)); *cf. Fisher v. Rose*, 757 F.2d 789, 792 (6th Cir. 1985) (noting that alleged speedy-trial violation challenged before trial generally requires exhaustion).

same offense – that is, simply *being tried* twice for the same offense – to "enjoy the full protection of the Clause, [a defendant's] double jeopardy challenge . . . must be reviewable before [the] subsequent exposure occurs." *Abney v. United States*, 431 U.S. 651, 662 (1977). Accordingly, we have held that "the federal adjudication of double jeopardy claims raised on pre-trial petitions for habeas corpus is appropriate when those claims have been raised and rejected in the state trial court and under state law there is no right to interlocutory appeal." *Harpster*, 128 F.3d at 325. Because Phillips moved to dismiss the indictment in state court, consideration of his claim is appropriate.

The Fifth Amendment's Double Jeopardy Clause, applicable to the states through the Due Process Clause of the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 787 (1969), "protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). Stated otherwise, the clause "affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.'"[5] *Id.* at 672-73 (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)). That right, however, is not absolute, and the Clause does not guarantee that the state's interest in enforcing the criminal laws against a defendant will be vindicated in a single trial. *Id.* at 673. For example, where a trial is terminated at the defendant's urging, the Double Jeopardy Clause does not bar a retrial. *Id.* at 673.

Under a "narrow exception" to this general rule, *id.* at 673, where "the conduct giving rise to the [defendant's] successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial," the defendant "may invoke the bar of double jeopardy in a second effort to try him." *Id.* at 679; *see id.* at 676 ("Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."). "[T]his standard is exacting." *Martinez*, 644 F.3d at 243. "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, . . . does

---

[5]In a jury trial, jeopardy attaches once a jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 38 (1978).

not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Kennedy*, 456 U.S. at 675-76. The prosecutor's intent, then, is what matters. Intent generally is inferred from objective facts and circumstances. *Id.* at 675; *see also id.* at 680-81 (Powell, J., concurring) ("Because 'subjective' intent often may be unknowable, I emphasize that a court – in considering a double jeopardy motion – should rely primarily upon the objective facts and circumstances of the particular case.").

In this case, Phillips contends that the prosecutor sought to amend the indictment, hoping and intending that Phillips would seek a mistrial were the court to allow amendment. He posits that his attorney had severely impeached D.B. and thereby significantly weakened the prosecutor's case, so the only way to prevent an acquittal was to start over by getting Phillips to successfully seek a mistrial. According to Phillips, in order to "goad" him into seeking a mistrial, the prosecutor sought to amend the indictment to allege that the first incident occurred between December 1, 2005, and May 31, 2006, which would provoke Phillips to seek a mistrial to give him the opportunity to investigate a defense to that period of time. We find that this theory lacks record support and is contrary to the factual finding of the state trial court that the amendment was caused by the prosecutor's negligence in preparing the case for trial. Although we review the state proceedings de novo, we nevertheless find it appropriate to give deference to the trial court's factual finding regarding the intent of the prosecutor because it was in the best position to make the finding. *Cf. United States v. White*, 914 F.2d 747, 752 (6th Cir. 1990) (according "great deference" on direct appeal to the district court's determination of the prosecutor's intent).

Phillips asserts that the state court's finding should be given little to no deference because it was made by a visiting judge assigned the case the morning of trial "who knew nothing about the case" and was therefore in a weak position to make the determination. We disagree, but regardless of the deference we owe the judge's finding as a legal matter, we find that the record fully supports it.

The colloquy between the court and the parties at sidebar demonstrated that the prosecutor had made a mistake in preparing the case for trial. It seems clear from the documentary evidence that the first incident, if it did happen, occurred on December 18, 2005, not on some day in May 2006, as the indictment alleged. (The internet history and photographs bear the December 2005 date, and there is no indication that the date borne by the evidence is unreliable.) D.B. told investigators that the incident occurred in May 2006, but in light of the hard evidence in the case, it seems fairly certain that she is mistaken.

Because the evidence at trial varied from the date alleged in the indictment, the prosecutor sought to amend the indictment to conform it to the evidence, a course of action Ohio's court rules permitted him to pursue. Time is not an essential element of the offense of Unlawful Sexual Conduct with a Minor, *see* Ohio Rev. Code § 2907.04(A), so a prosecutor need only show that the offense took place on a date reasonably close to the one charged in the indictment. *State v. Carey*, 157 N.E.2d 381, 386 (Ohio Ct. App. 1958); *see also* Ohio Crim. Instr. 413.07(1)(A). Because the indictment charged an indeterminate date in May 2006, the prosecutor risked an acquittal based solely on a technicality: the jury could conclude that the December 18 date was not reasonably close to the charged date and acquit for that reason, even if it found that the incident did in fact occur, just on a different date.[6] To remedy the variance, the prosecutor sought to amend the indictment to conform it to the evidence adduced at trial. The prosecutor's purpose in seeking an amendment was to get an amendment that would help to secure a conviction, not to provoke a mistrial. His negligence in preparing the case for trial, negligence which later gave rise to the amendment and, consequently, the mistrial, is not enough to meet the narrow exception to retrial recognized in *Kennedy*. *See United States v. El-Mezain*, 664 F.3d 467, 561-62 (5th Cir. 2011); *United States v. Thomas*, 728 F.2d 313, 318 (6th Cir. 1984), *abrogated on other grounds by United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994); *see also White*, 914 F.2d at 752 (holding that

---

[6]In this regard, the trial court noted that, without an amendment to the date of the first charge alleged in the indictment, there were still two other charges that were "viable," i.e., those arising out of the second alleged incident.

a mistrial caused by conduct motivated by prosecutorial inexperience, even if deliberate, did not bar a retrial under *Kennedy*).

Phillips resists this conclusion and argues that the prosecutor's intent may be inferred from the fact that he did not oppose a mistrial and was not surprised when Phillips requested one. Phillips draws heavily on Justice Powell's concurrence in *Kennedy* and our decision in *White*, both of which recognized that a prosecutor who is surprised by and later opposes a defendant's motion for a mistrial generally has not intended to provoke a mistrial. We find the reliance misplaced. Initially, the prosecutor *did oppose* the basis for a mistrial when he argued that Phillips would suffer no prejudice by the amendment and that any claim to the contrary was "disingenuous" because defendant's counsel was in possession of the internet history and date-stamped photographs well before trial. Regardless, given the trial court's earlier finding during the sidebar conference that Phillips *would* be prejudiced by an amendment and the court's later statement during the motion hearing that it was not inclined to grant a continuance, it would surprise *no one* that Phillips would seek a mistrial and that the court would grant one. The lack of surprise to the request is thus of no import here. Moreover, there was little the prosecutor could say or do at that point to oppose Phillips's request for a mistrial because Ohio Criminal Rule 7(D) *entitles* a defendant to one if he has been misled or prejudiced by the defect or variance the amendment is intended to cure. So the lack of a vigorous opposition to his mistrial motion is also of little help to Phillips.

Phillips argues that the weaknesses in the case that were unearthed as the trial progressed demonstrate that the prosecutor wanted a mistrial and acted in a calculated attempt to goad Phillips into requesting one. But any such weaknesses are inherent in the case and will not be obviated in a retrial, so the prosecutor gained no advantage by the mistrial, making it less likely that he goaded Phillips. Any retrial is sure to be plagued with the same problems present at the first trial. Among other inconsistencies in her testimony, D.B. told police in her initial statement that the incident occurred in May 2006, a date that does not match the dates of the photographs and internet history.

And she testified under oath at the first trial that the incident occurred in May 2006, testimony that potentially can be used to impeach her at a retrial if she changes her story. Furthermore, her close relationship with her foster mother and admitted willingness to lie to protect her – very damaging evidence for the prosecution in a case that is based almost entirely on the testimony of the victim – will again be fair game at a retrial.

## IV.

Phillips has not demonstrated that the prosecutor sought to amend the indictment in order to goad Phillips into moving for a mistrial. The district court properly determined that Phillips failed to make a showing under *Kennedy*'s narrow exception to the rule that allows a defendant to be retried when the first trial is terminated at the request of the defendant. We affirm.