

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | |
|---|---|
| § | No. 08-14-00082-CR |
| § | |
| EX PARTE: DORA AHN, | Appeal from |
| § | 346th District Court |
| § | of El Paso County, Texas |
| § | (TC# 20110D00574) |

## **O P I N I O N**

Dora Ahn was charged with multiple counts of injury to a child. In this appeal, we are asked whether the State is barred by double jeopardy from prosecuting Ahn for a second time after a mistrial was declared in her first trial. The mistrial arose because of unexpected testimony elicited from a treating medical doctor by the State's attorney. We affirm the trial court's denial of Ahn's Application for pretrial habeas corpus relief based on double jeopardy.

## **DOUBLE JEOPARDY**

In her sole issue, Ahn contends that the Fifth Amendment to the United States Constitution prohibits a retrial of her case. The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. U.S. Const. art. V; *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). Jeopardy attaches once a jury is empaneled and sworn. *Martinez v. Illinois*, __U.S.__, 134 S.Ct.

2070, 2072, 188 L.Ed.2d 1112 (2014). The Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal." *Oregon v. Kennedy*, 456 U.S. at 671-72, 102 S.Ct. at 2087; *see Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex.Crim.App. 2007). And while a prosecutor is generally entitled to one, and only one opportunity to have the defendant stand trial, *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1977), the rub comes when that first trial must be terminated, such as through a mistrial.

As a general rule, double jeopardy does not bar a retrial when a mistrial is granted at the defendant's request. *Oregon v. Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088. But there is an important exception: the Double Jeopardy Clause will bar retrial when the defendant is able to show that the prosecution engaged in conduct that was intended to provoke the defendant into moving for a mistrial. *Id.* at 679, 102 S.Ct. at 2091; *Ex parte Lewis*, 219 S.W.3d at 371. The Texas Court of Criminal Appeals has also described the exception as encompassing improper actions intentionally done with the specific intent to avoid an acquittal at the first proceeding. *Ex parte Masonheimer*, 220 S.W.3d 494, 507-08 (Tex.Crim.App. 2007). In *Ex parte Masonheimer*, for instance, the State was alleged to have intentionally refused to turn over *Brady* materials to the defense which led to a mistrial. *Id*. at 499.

At one time, Texas had a much broader view of this exception and barred a retrial when it was shown that the prosecutor was aware of, but consciously disregarded the risk that his conduct would require a mistrial at the defendant's request. *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App. 1996). But *Bauder* was overruled by *Ex parte Lewis* and the Texas rule is now co-extensive to the *Oregon v. Kennedy* standard. *Ex parte Lewis*, 219 S.W.3d at 371. The present day exception has been described by both the United States Supreme Court and the Court

2

of Criminal Appeals as a narrow one. *Oregon v. Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088; *Ex parte Masonheimer*, 220 S.W.3d at 506.

To come within this narrow exception, a habeas corpus applicant must prove the double jeopardy claim by a preponderance of the evidence. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex.Crim.App. 2013). In reviewing the trial court's decision to deny habeas relief, we consider the evidence in the light most favorable to the trial court's ruling. *Ex parte Masonheimer*, 220 S.W.3d at 507. We afford almost total deference to the trial judge's determination of historical facts which are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

### FACTUAL SUMMARY

Ahn was indicted on multiple counts of injury and serious bodily injury to a child. The child, whom we refer to as K.K., was Ahn's daughter who was six years old at the time of the offense. Counts one through four describe specific actions that Ahn is alleged to have directed to specific body parts of K.K. (i.e. Ahn with a belt, wire, hand, foot, or buckle caused injury to K.K.'s arm, leg, or body). Counts five and six allege that Ahn failed to seek medical attention and failed to protect K.K. as a parent should. The underlying facts suggest that K.K. was beaten with a belt, a belt buckle, a wire, and by hand, and that both Ahn and her husband in varying degrees participated in that abuse. Ahn's theory at trial was that the abuse came from the husband, and that she was victimized by him as well.

Ahn's case proceeded to a jury trial. The State called K.K., then aged nine, who testified that her mother would spank her on the back with a wire. She also acknowledged that her father spanked her with a belt. She testified to having scars from the spankings. K.K's younger sister

3

also testified to seeing both Ahn and the father spank K.K. A forensic nurse similarly testified that K.K. said that both her dad and mom had hit her with a belt and a wire.

The issue came to light when the police were called on December 26, 2010 to an apartment complex where K.K. and her parents had resided. Several first responders testified at trial to the encounter. A relative at the scene pointed out injuries on K.K.'s body. The officers documented bruising and raised marks throughout K.K.'s back and torso, thighs and buttocks, including loop type patterns on her back. She had cuts in various stages of healing. Her feet were swollen and there were marks along with bruising on her legs and ankles. The police noticed a scabbed wound on her head and the bridge of her nose. The police took a series of photographs at the scene depicting these wounds which were admitted into evidence at trial.

The child was then taken to the hospital and admitted under the care of Dr. Roberto Canales as the on call physician. X-rays showed one of K.K.'s ankles was broken and that she had several rib fractures. The child was in the hospital for ten days. Another set of photographs taken by the police at the hospital were admitted into evidence. At trial, the State called K.K.'s treating pediatrician who testified that none of these injuries were present in April of 2010 when he had seen the child. The injuries were in various states of healing when he saw K.K. on January 12, 2011. The scars were still present in July 2013 when he last saw the child.

The State then called Dr. Canales to testify. After establishing his qualifications as a physician and the circumstances of seeing K.K., Dr. Canales was asked to describe the various injuries as seen on some of the photographs. At that point, this exchange occurred:

[PROSECUTOR]: And can you please describe the injuries in State's Exhibit No. 4?

[Dr. CANALES]: This is an old injury that's already healing. This was like somebody tied her legs here, right here, and this right here --

THE COURT: I'm sorry, Dr. Canales. I will ask you to go a little slowly, okay, just so everybody can hear you.

[Dr. CANALES]: This here, it's like she was tied with something.

[PROSECUTOR]: Okay.

[Dr. CANALES]: This one is an old lesion, and both feet were inflamed.

[PROSECUTOR]: Okay. And so you say that the feet look like there was something that was tied, and then a lesion. And then explain what you mean the feet being inflamed.

[Dr. CANALES]: When you tie the feet, the circulation gets a little decreased circulation, and it gets very swelling of the legs, of the feet.

THE COURT: I'm sorry. When you tie someone --

[Dr. CANALES]: Then your feet get edema. The circulation --

[DEFENSE ATTORNEY]: Your Honor, I ask that we approach.

THE COURT: Hold on a second. I want to make sure -- you can approach in a minute. I want to make sure that his response is taken down by my court reporter and that my jury can hear, so hang on a second. So you were saying -- would you go ahead and repeat slowly into the microphone? You can turn this way, Doctor. Go ahead.

[Dr. CANALES]: This here, (pointing), is like somebody tied the legs with something. And when you tie it, you impede the circulation -- so your feet get swelled [sic] -- swollen.

THE COURT: Okay. I'm going to stop you there. Go ahead and approach. Thank you. And I apologize, Doctor, we have a really bad system, so I apologize for having to stop you. Thank you.

At that point, Ahn moved for a mistrial because the State had never disclosed as an extraneous offense that the child had been tied up while being beaten. In the ensuing discussion, the State's prosecutor stated on the record that while she had talked to Dr. Canales before he took the stand, she did not know he would testify that K.K. had ligature type markings. The prosecutor also stated that once Dr. Canales testified that the wounds were "like" someone had

5

tied up the child, she tried to steer the doctor's testimony back to the edema in the feet as a consequence of the broken ankle. The State urged the trial court to instruct the jury to disregard the ligature testimony and proceed forward with the trial.

Instead, the trial court granted a mistrial. The trial court noted that *it* asked the doctor to repeat his testimony because he was hard to understand. The trial court also stated that: "I do not believe that the D.A.'s Office in any way, shape, or form had any type of misconduct in asking that question at all. . . . And I am going to find that there was no misconduct in the D.A.'s Office at that point in time for that question."

### *The Application for Habeas Corpus*

Following the mistrial, Ahn filed a Pretrial Application for Writ of Habeas Corpus. The factual portion of the Application focused solely on the ligature testimony from Dr. Canales. The Application was premised on the alleged "gross negligence" of the State's prosecutor in admitting that testimony:

> In the case before this court, Defendant did seek a termination of the proceeding, but did so as a result of GROSS NEGLIGENCE that had been committed by the State's attorney. As a result, as Defendant will argue, the original trial in this case resulted in a mistrial due to the State's conduct, and a retrial is barred by double jeopardy.

No evidence was offered at the hearing on the Application.[1] Ahn's counsel argued that the applicable legal standards for double jeopardy allowed the trial court to grant the Application if the State either: 1) specifically intended to provoke the defense into moving for a mistrial; or 2) was grossly negligent in doing so. Ahn's counsel effectively conceded that the trial court was

---

[1] In fact, neither attorney had a transcript of Dr. Canales's testimony and instead argued from their recollection of what they thought had happened at trial.

correct in its earlier finding that the State had not acted intentionally.[2]  Instead, counsel argued that under *Ex parte Peterson*, 117 S.W.3d 804 (Tex.Crim.App. 2003), the trial court could grant the Application if the State's prosecutor was grossly negligent in eliciting the ligature testimony. The State's prosecutor responded that the correct legal standard is found in *Ex parte Lewis*. After requesting copies of both the *Ex parte Peterson* and *Ex parte Lewis* cases, the court took the matter under advisement and denied the Application.

## ANALYSIS

Ahn frames the issue on appeal as whether the trial court erred in failing to grant her writ of habeas corpus.  We think the answer to that question is rather straightforward.

The Application focused only on the questioning of Dr. Canales, and contended that the State was grossly negligent for asking certain questions of him.  At the hearing, Ahn's arguments tracked the Application.  The gross negligence standard that Ahn was urging derives from *Ex parte Peterson.*   But *Peterson* had been expressly overruled in *Ex parte Lewis*, (some seven years before the hearing in this case). 219 S.W.3d at 371.[3]  *Ex parte Lewis* brought Texas law in line with the federal standard of *Oregon v. Kennedy*.  *Id*.  And under federal law, gross negligence is not a cognizable basis to grant habeas corpus relief in a situation like this.  *U.S. v. El-Mezain*, 664 F.3d 467, 561 (5th Cir. 2011)("Gross negligence by the prosecutor, or even intentional conduct that seriously prejudices the defense, is insufficient to apply the double jeopardy bar."); *Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011)("Not even the

---

[2]  [DEFENSE COUNSEL]:  "Ms. Hamilton is half correct. Double jeopardy attaches and retrial is barred when -- only when one of the two occurs.  She's correct about one of the two: that state's conduct was specifically intended to provoke the defense into moving for mistrial.  That's what she just said and that's what she said my basis for the writ is.  But that's not what the basis for my writ is.  . . .  So she is correct, the first part.  Do I think that -- that Ms. Diaz did it intentionally for me to ask for a mistrial?  I don't think she did it intentionally for me to ask for a mistrial.  That's not the only standard.

[3]  "Consequently, we overrule *Bauder* and its progeny (*Bauder III, Lee II, Peterson II* )."  *Id*.  "Peterson II" was the shorthand the Court of Criminal Appeals used for *Ex parte Peterson,* 117 S.W.3d 804 (Tex.Crim.App. 2003), the case Ahn argued at the hearing. 219 S.W.3d at 338, n.12.

government's 'gross negligence' would prevent a retrial of the defendant."), *citing Robinson v. Wade*, 686 F.2d 298, 306 & n.17 (5th Cir. 1982); *United States v. Huang*, 960 F.2d 1128, 1133 (2d Cir. 1992) ("Negligence, even if gross, is insufficient [to preclude retrial under the Double Jeopardy clause]."). We can hardly fault the trial court for overruling an Application that was premised on an incorrect legal standard from an overruled case.

On appeal, and through different counsel, Ahn wisely jettisons the gross negligence theory, but is nonetheless hamstrung by it. Ahn now contends that the "state engaged in conduct with the intent to provoke a mistrial and intentionally engaged in misconduct with the intent to avoid an acquittal." She argues that *Ex parte Masonheimer* allows this Court to look at a "pattern of intentional misconduct on the part of the state designed to goad her into her mistrial request and to avoid what was a certain acquittal." The "pattern" according to Ahn includes such matters as a witness referring to the child as a "victim," attempts by the State to limit references to the husband's guilty plea, the State's attempted use of additional photographs taken by the hospital and obtained on the eve of trial, and the prosecutor praising nine-year-old K.K. on the stand. There are additional actions that Ahn now contends show the State was trying to avoid an acquittal. We need not recite them all, and note only that none were a part of the Application or argued as a basis for the Application below. And that is a problem.

A court of appeals must examine whether error is properly raised and preserved, even if the parties do not. *See Leal v. State*, 456 S.W.3d 567, 568 (Tex.Crim.App. 2015)("Issues of procedural default are systemic and must be reviewed by the courts of appeals, even when the issue is not raised by the parties."). In order to preserve a complaint for review, a party must generally have first presented the matter to the trial court stating the specific grounds for the ruling desired. TEX.R.APP.P. 33.1. The objection on appeal must then be the same as the

8

objection that was made to the trial court. *Curry v. State*, 910 S.W.2d 490, 495 (Tex.Crim.App. 1995); *Wagner v. State*, 687 S.W.2d 303, 306-07 (Tex.Crim.App. 1984)(specific objection raised on appeal will not be considered if it varies from the specific objection made at trial).

These same general precepts apply in the habeas corpus context and preclude us from considering grounds not urged to the trial court. *See Ex parte Motta*, No. 13-13-00667-CR, 2014 WL 6602280, at *3 (Tex.App.--Corpus Christi Nov. 20, 2014, no pet.)(mem. op., not designated for publication)(finding that the appellant waived his argument regarding the trial court's admonishments because he did not include the argument in his application for writ of habeas corpus); *Ex parte Gandara*, No. 08-10-00234-CR, 2011 WL 5995428 at *2 (Tex.App.--El Paso Nov. 30, 2011, no pet.)(not designated for publication)(claim that affidavit was defective which was not asserted below was waived); *Ex parte Martinez*, No. 08-00-00519-CR, 2002 WL 595045 at *2 (Tex.App.--El Paso April 18, 2002, no pet.)(not designated for publication)(failure to raise issue of bail conditions in habeas application precluded raising that argument for the first time on appeal); *Ex parte Dwyer*, No. 08-01-00059-CR, 2002 WL 28018 at *5 (Tex.App.--El Paso Jan. 10, 2002, pet. ref'd)(not designated for publication)(failure to raise issue of bias of court in habeas application waived issue on appeal); *Ex parte Torres,* 941 S.W.2d 219, 220 (Tex.App.--Corpus Christi 1996, pet. ref'd)(collateral estoppel issue not raised at trial court was waived on appeal). This rule seems especially important when the trial court must determine the prosecutor's intent in taking the various tactical moves of which Ahn now complains. Accordingly, we will not consider whether a pattern of conduct was intended to cause a mistrial as that argument is waived. We only consider the conduct complained of in the Application below (the admission through Dr. Canales of the ligature testimony). And even assuming that

the Application raises the question of whether Doctor Canales's ligature testimony was intended to cause a mistrial, we would overrule that complaint on the merits.

To differentiate the kind of intentional goading conduct which invokes the Double Jeopardy Clause from the inevitable mistakes made during a rough and tumble trial, the Court of Criminal Appeals has set out a nonexclusive list of objective factors:

> 1) Was the misconduct a reaction to abort a trial that was 'going badly for the State?' In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?
>
> 2) Was the misconduct repeated despite admonitions from the trial court?
>
> 3) Did the prosecutor provide a reasonable, 'good faith' explanation for the conduct?
>
> 4) Was the conduct 'clearly erroneous'?
>
> 5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?
>
> 6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct?

*Ex parte Wheeler,* 203 S.W.3d 317, 323-24 (Tex.Crim.App. 2006).[4] These factors support the trial court's finding below that the State was not intentionally engineering a mistrial through Dr. Canales.

*Was the Case Going Badly for the State?*

The first factor--whether the trial was going badly for the State--cannot always be judged from the written record. Ahn claims in her brief that the State's case was going poorly; the State claims just the opposite contending it put on evidence proving each element of the offense. From the record before us, we see no untoward events or insurmountable rulings that befell the

---

[4] *Ex parte Wheeler* is a pre-*Ex parte Lewis* case, but these factors were set out to assist in deciding claims under either the federal or state constitutional guarantees against double jeopardy and would still apply to the *Oregon v. Kennedy* analysis. 203 S.W.3d at 323.

State.  The trial court had excluded some of the photographs depicting the injuries to the child, but largely on the grounds that some were duplicative.  The trial court had excluded an entire series of photographs taken by the hospital, but again there were claims these excluded photographs showed nothing more than what the other photographs already showed.  Nor are any of the excluded photos in our record such that we could conclude they offered something new or different that undermined the State's case.  With regard to other rulings in the case, the trial court had in fact sustained several of the State's objections, restricting Ahn from inquiring into some witnesses past experiences with abused women, and from the children as to who spanked the hardest, Ahn or the father.  Essentially, nothing about the admission of the evidence informs us that the State's case was unduly hampered by any of trial court's rulings, or presentation by the witnesses.

We note that K.K. and her sister had not testified to facts supporting each and every allegation in Counts One through Four of the indictment.  But their testimony, in conjunction with the photos, and out-cry statements, could support some of the Counts.  And even if the jury believed that K.K.'s father had done most of the beatings, the State still had the injury to the child by omission Count.  The State had not completed its case by the time the mistrial was declared; the record is unclear as what additional testimony it may have offered.  Nor do we have an indication of the strength of Ahn's case that she would have presented.[5]  As a whole, the record does not objectively compel a finding that the State's case was going so poorly that it had to prompt a mistrial.

---

[5]  Ahn was developing her case for duress and battered wife syndrome, and had elicited some testimony consistent with those claims.  She had retained an expert to support that theory and had secured her husband's appearance for the trial, but as neither had testified by the time of the mistrial, we are uncertain as to what their testimony would have eventually shown.

*Was the misconduct repeated despite admonitions from the trial court?*

The prosecutor asked Dr. Canales a non-leading question which elicited the objectionable response. From the previous questioning of the doctor, there was no indication that he was straying from the opinions laid out in the medical record, and accordingly, there were no admonitions from the trial court. Once the objectionable ligature opinion came out, it was the trial court that had Dr. Canales repeat the opinion at least twice. The State's attorney restated the opinion into the predicate for the next question, but there were no admonitions from the trial court preventing her from doing so.

*Did the prosecutor provide a reasonable, good faith explanation for the conduct?*

We would also agree that the prosecutor provided a reasonable good faith explanation of what happened here. Dr. Canales was a treating doctor of the child, and not a retained expert. The prosecutor's initial question allowed, but did not compel the ligature testimony. The State's attorney represented on the record that she herself talked to the doctor before he testified, but he did not inform her of the ligature opinion. The State's prosecutor also explained how her subsequent question that repeats the ligature opinion was part of her effort to steer the doctor back to her intended line of questions. So long as the prosecutor's explanatory statement to the trial court came from first-hand knowledge, they can be considered as evidence. *See State v. Guerrero*, 400 S.W.3d 576, 585 (Tex.Crim.App. 2013). The prosecutor would have first-hand knowledge of her pre-trial dealings with Dr. Canales and her rationale in asking the questions that she did. A statement made by counsel in open court without being contradicted provides *some* evidence of the fact asserted. *See Thieleman v. State*, 187 S.W.3d 455, 457 (Tex.Crim.App. 2005). Here the prosecutor made representations to the trial court that Ahn did not dispute at the time, and if anything agreed to at the hearing on the Application.

"In most cases, the circumstances leading a defendant to request a mistrial are accidental, such as a State's witness blurting out unelicited, inadmissible testimony." *Ex parte Masonheimer*, 220 S.W.3d at 509-10 (Meyers, J., concurring). The events here seem to bare out that reality.

*Was the conduct 'clearly erroneous'?*
*Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?*

We first separate the prosecutor's conduct from that of the witness. The conduct by the prosecutor was in asking a non-leading question, conduct which is in fact favored by the rules of evidence. TEX.R.EVID. 611(c). The only other conduct by the prosecutor was in paraphrasing Dr. Canales's testimony as a predicate for a further question. While perhaps not preferred, this practice is common enough in Texas courtrooms and does not prove that the prosecutor was baiting a mistrial motion.

*Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence verse intentional misconduct?*

Under this last *Wheeler* factor, we might at least take some measure of the rest of the conduct of the trial. By way of example, Ahn complains that a police officer referred to K.K. as a "victim" in violation of a trial court's order limiting use of that word. During the examination of the previous witness, Ahn's counsel had approached the bench and made an oral motion in limine to exclude use of the term "victim" which the trial court granted. We think it more reasonable to assume that the next witness's use of the term is more consistent with the prosecutor not being able to round up and further instruct their witnesses during the middle of a trial, than some Machiavellian intent to engineer a mistrial. We have considered each of the other circumstances raised by Ahn to see if they provide a different context for Dr. Canales's

13

ligature testimony. None objectively shows that the State intended to elicit the ligature testimony, much less that that testimony was intended to compel a motion for mistrial.

In short, Ahn carries the burden to prove entitlement to habeas relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex.Crim.App. 2002). She has simply not carried that burden for the conduct alleged in her Application. We overrule Issue One and affirm the denial of the Pretrial Application for Writ of Habeas Corpus.

August 19, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)